**DUANE A. BOSWORTH, OSB #825077**
duanebosworth@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

      Attorneys for Oregon Public Broadcasting
      and John Sepulvado

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>              **PLAINTIFF**,<br><br>v.<br><br>**JASON PATRICK, DUANE LEO EHMER, DARRYL WILLIAM THORN, and JAKE RYAN,**<br><br>              **DEFENDANTS**. | Case No. 3:16-CR-00051-BR<br><br>**MOTION OF JOHN SEPULVADO AND OREGON PUBLIC BROADCASTING TO QUASH SUBPOENA** |

Reporter John Sepulvado and the employer for whom he engaged in his news gathering efforts at all times material to this matter, Oregon Public Broadcasting ("OPB"), move this Court for an order quashing the subpoena served on Mr. Sepulvado on February 16, 2017, compelling him to testify, without stated description or limitation, on February 21, 2017.

## I.     INTRODUCTION

The command to testify, now revealed to concern the "authentication" of a radio segment created by Mr. Sepulvado and broadcast by OPB, might at first glance appear to impose less than

Page 1 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

drastic injury to Mr. Sepulvado's future newsgathering efforts or those of OPB's other journalists. That appearance would not be correct. First, it should be understood that the government has advised that "authentication" will not be limited to confirming that Mr. Sepulvado in fact recorded Ryan Bundy and that the voices in the recording are his and Mr. Bundy's. Instead, as described in very recent discussion with counsel, Mr. Sepulvado will be required by the government to testify about what led to his interview of Ryan Bundy and to broadly address whether the recording fully, accurately, and objectively captured what Ryan Bundy in fact said to Mr. Sepulvado. The compelled testimony will also inquire about any editing of Mr. Bundy's remarks. However innocuous "authentication" may seem, that will chill future sources, even nonconfidential ones. That testimony, alone, will create injury to the reporter and to the future newsgathering efforts of all OPB journalists. Mr. Sepulvado will be put in the position of testifying against a source, albeit nonconfidential, who agreed to talk with him. Federal decisions, along with cited scholarly materials, have recognized the significant costs even in this regard.

      Second, without diminishing the problems posed by the compelled "authentication," it is the resulting, exhaustive cross-examination that will inevitably, within defendants' rights, be extraordinarily invasive and create exceptional damage to Mr. Sepulvado and to reporters now and in the future at OPB. If Mr. Sepulvado is required to testify to the authentication demanded by the government, defendants will of course, and properly, be entitled to extensively examine Mr. Sepulvado regarding every aspect of his news gathering efforts in regard to the particular broadcast including: whether there are or were other recordings or additional recorded material; the circumstances concerning how Mr. Sepulvado obtained an interview with Ryan Bundy; whether the statements offered actually represent Mr. Bundy's entire discussion and whether Mr. Sepulvado has any bias; and questions about Mr. Sepulvado's sources, all in aid of determining the weight, slant, accuracy and validity of statements in the radio segment. With regard to bias,

Page 2 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Mr. Sepulvado not unreasonably believes he would be asked who he has met with, and regarding the Malheur Occupation, what and when was their conversation.

If Mr. Sepulvado is required to testify for the government, the resulting cross-examination will invade every aspect of his newsgathering efforts. To be clear, it is not Mr. Sepulvado's or OPB's position that defendants should not be permitted to ask their questions, but instead that if he is compelled by the government to testify as the government requires, that compelled testimony will invariably lead to questions that will invade both confidential and nonconfidential newsgathering, and will have an exceptional impact on his and OPB's future newsgathering. For these reasons Mr. Sepulvado and OPB ask this Court to quash the subpoena issued by the government, which will generate an avalanche of invasive inquiry exceptionally affecting newsgathering.

## II.    FACTS

Under the circumstances, movants will shortly provide a declaration further establishing the following facts.

The government communicated with this counsel and with OPB about issuing a subpoena to Mr. Sepulvado early last fall, in 2016. The government indicated that a subpoena would be issued soon after that discussion but nothing more was heard until February, 2017.

The matter of a subpoena to be issued to Mr. Sepulvado reappeared for the first time on February 6, 2017. Mr. Sepulvado received a telephone call from Ryan Bounds, Assistant U.S. Attorney, informing him that the government intended to subpoena him. Mr. Bounds followed this up with an email to him that same day, at 5:18 p.m., in which he briefly outlined the testimony to be commanded, including whether the January 9, 2016 interview, as published on OPB's website, fairly and accurately depicted Mr. Bundy's statements and had not been edited or altered to mischaracterize what Mr. Bundy said. Mr. Bounds also described to Mr. Sepulvado on February 6 that "Your willingness to accept service of the subpoena and to testify thereunder

Page 3 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

may obviate the Attorney General's personal authorization for the issuance of the subpoena (which we may not be able to procure in time) …."

At noon on February 7, 2017, Mr. Sepulvado confirmed with Mr. Bounds that he and OPB would not agree to his testifying. A few minutes later Mr. Bounds asked for the name and number of the OPB person with whom Mr. Sepulvado talked. Later that day Mr. Bounds spoke with Rebecca Morris, general counsel for OPB, who confirmed that Mr. Sepulvado and OPB strongly objected to the government's effort to compel Mr. Sepulvado's testimony.

Nothing was heard from the government until 2:00 p.m. on Thursday, February 9, 2017, when Mr. Bounds emailed Ms. Morris to ask whether OPB had a copy of the entire raw recording of Ryan Bundy's interview with Mr. Sepulvado. Ms. Morris promptly responded that OPB did not have such a copy and that as she had told Mr. Bounds' colleagues the previous fall, "It would be unusual for our news room to retain raw footage after a story has been edited and published." Mr. Bounds followed that up again with a question about whether Mr. Sepulvado himself might have retained "a complete copy" of the interview. Ms. Morris told him she was certain Mr. Sepulvado did not have any raw recording.

No further discussion occurred between anyone at the government and either Mr. Sepulvado or anyone at OPB until February 15, when Mr. Bounds told Ms. Morris that the government did in fact intend to subpoena Mr. Sepulvado. OPB learned that the government had stated in open court on February 15, 2017 that Mr. Sepulvado would be subpoenaed.

At 8:30 a.m. on Thursday, February 16, Mr. Bounds emailed Ms. Morris that "the Attorney General has authorized the issuance of a subpoena to Mr. Sepulvado". Mr. Bounds said the government expected to serve Mr. Sepulvado that day and informed Ms. Morris, for the first time, that: "Please note that the court has set a hearing for tomorrow to determine the admissibility of the OPB report."

Mr. Bounds emailed Ms. Morris again on the same day at 11:13 a.m. stating, in toto and for the first time, "the subpoena for Mr. Sepulvado will be for 2/21 (the first day of trial)."

Page 4 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

At 1:44 p.m. on February 16, 2017 Mr. Bounds emailed Mr. Sepulvado, stating "As I indicated to Ms. Morris at OPB earlier today (*before I had a copy of it*), Attorney General Sessions himself has authorized the issuance of the attached subpoena to you." (Emphasis added.) Mr. Bounds told Mr. Sepulvado for the first time that: "The court has provisionally set a hearing ... TOMORROW at 1:00 p.m., but that will clearly have to be rescheduled in light of the delay in getting approval for the subpoena. We can work with your lawyer on that, *so please let us know as soon as possible who your lawyer will be*." (all capitalization and italics in original).

### III. ARGUMENT

Department of Justice rules, found at 28 C.F.R. § 50.10, provide guidance to this Court regarding the balancing of issues involved in compelling a reporter to testify or to provide information. On their face at least, the rules demonstrate the societal values at issue.

Section 50.10 is titled in pertinent part "Policy regarding obtaining information from, or records of, members of the news media …." The rules begin with a "Statement of Principles" that "because freedom of the press can be no broader than the freedom of the news media to investigate and report the news, the Department's policy is intended to provide protection to members of the news media from certain law enforcement tools, whether criminal or civil, that might reasonably impair newsgathering activities." The Principles recognize "safeguarding the essential role of the fair press in fostering government accountability and an open society."

The rules describe the intent of policy to "protect freedom of the press, newsgathering activities, and confidential news media sources" and require that "the government should have made all reasonable attempts to obtain the information from alternative, non-media sources" and "should have pursued negotiations with the affected members of the news media …." Members of the Department of Justice are specifically instructed that a "subpoena should be narrowly

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

drawn. It should be directed at material and relevant information regarding a limited subject matter … and should give reasonable and timely notice of the demand."[1]

In addition to 28 C.F.R. § 50.10, federal courts are advised of other sources that provide guidance regarding compelled testimony or provision of information. Multiple decisions regarding privilege in federal courts have concluded that a court may, and as often stated, should, consider state privilege law. *See, e.g., In the Matter of Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975), citing Ninth Circuit and Second Circuit rulings. In *Baker v. F&F Investments*, 470 F.2d 778 (2d Cir 1972), the court considered relevant New York and Illinois state privilege law which it found "reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters.…" With regard to the "compelled disclosure of confidential sources" in particular, the court found that "the deterrent effect such disclosure is likely to have upon future 'undercover' investigative reporting, the dividends of which are revealed in articles such as [the one at issue] threaten the freedom of the press and the public's need to be informed. It thereby undermines values which traditionally have been protected by federal courts applying federal public policy."

In *Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979), the court held that

> "Although we are not bound to follow Pennsylvania law, neither should we ignore Pennsylvania's public policy giving newspaper reporters protection from divulging their sources. Pennsylvania regards newspapers as 'the principal guardians of the general welfare of the Community' who are 'in the best sense of the maxim *pro bono publico*….' Pennsylvania's concern that newspapers be encouraged and protected in the newsgathering and communications functions [has been] expressed by its highest court."

---

[1] In this matter the government, after many months to consider what it needed in this second trial, first mentioned an intent to subpoena Mr. Sepulvado in this matter on February 6. That intent apparently became a reality on February 15, and the subpoena was served on February 16, for appearance at trial during the week of February 21.

Page 6 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The court further stated that "the interests behind the Pennsylvania state and the federal common law in this regard are congruent, each stemming from an independent base of authority but both leading to protection of the vital communications role played by the press in a free society."

In *In Re Stratosphere Court Securities Litigation*, 183 F.R.D. 684 (D. Nev. 1999), the court stated that

> "although this court is not bound to follow Nevada law in determining whether reporters should be compelled to disclose his or her sources, when dealing with purely federal issues of law, it should not ignore Nevada's public policy, as expressed in its statute of providing reporters protection from divulging their sources. In writing his article for Nevada publication, clearly [the reporter] had a reasonable expectation that he would be protected by Nevada's media privilege law."

*Id*. at 686.

In this matter, movants respectfully contend that consideration should be given to Oregon's exceptional media shield law, ORS 44.510 *et seq*. Movants also ask the Court to note that Mr. Sepulvado conducted his reporting in this matter with "a reasonable expectation that he would be protected by [Oregon's] media privilege law" as described in *In Re Stratosphere*.

An examination of Oregon's media shield law demonstrates that, with the two exceptions of where probable cause exists to believe that a journalist is committing or is about to commit a crime, or where the content at issue forms the basis for a defense of a defamation action, privilege in Oregon is absolute, both with regard to "the source of any published or unpublished information" whether or not that source is wholly confidential, ORS 44.520(a) and, even more broadly, with regard to "any unpublished information obtained or prepared by the [journalist] in the course of gathering, receiving or processing information for any medium of communication to the public." *Id*. at (b). "'Unpublished information' includes, but is not limited to, all notes, outtakes, photographs, tapes or other data of whatever sort not themselves disseminated to the public … whether or not published information based upon or related to such material has been disseminated." ORS 44.510(5).

Page 7 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The strength of Oregon's law, upon which Mr. Sepulvado relied, is further demonstrated in ORS 44.520(1) which states "no person connected with, employed by or engaged in any medium of communication with the public shall be required by a legislative, executive, or judicial officer or body or any other authority having power to compel testimony of the production of evidence, to disclose by subpoena or otherwise" any source, confidential or not, or "any unpublished information obtained by the journalist in the source of newsgathering."

The strength of the statute on which Mr. Sepulvado reasonably relied in his decisions about newsgathering is further found in its direction that a journalist may not be compelled to testify or to disclose information by any "judicial officer or body." While Oregon's media shield law does not of course bind this Court at all in its determination of federal common law, respectfully it should be considered. Further, that Mr. Sepulvado acted at all times under the rules of that shield in making decisions about, for example, offering confidentiality or obtaining information, should be considered.

Finally, of course, decisional law guides this Court regarding reporter's privilege. Many of the Ninth Circuit's decisions regarding compelled testimony of a journalist involve a grand jury seeking criminal evidence. Those decisions follow the Supreme Court in *Branzburg v. Hayes*, 408 U.S. 665 (1972), in which, Justice Powell, concurring in a five to four decision, stated that he wanted to "emphasize what seemed to me to be the limited nature of the Court's holding," namely that the decision was with regard to journalists "subpoenaed to testify before a grand jury." *See In the matter of Lewis v. U.S.*, 501 F.2d 418 (9th Cir. 1974); *Farr v. Pitchess*, 522 F.2d 464 (9th Cir. 1975); *In re Grand Jury Proceedings*, 5 F.3d 397 (9th Cir. 1993). The testimony sought here is not for the compelling reason of criminal investigation.

In the first *Shoen v. Shoen* decision, 5 F.3d 1289 (9th Cir. 1993), the court held that the "journalist in question has standing to invoke the journalist's privilege regardless of whether the information sought was 'obtained under a promise of confidentiality' or whether the materials sought 'contained confidential information.'" The Court also cited with approval a description

Page 8 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

of some of a journalist's interests noted in *United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988):

> the threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; a disincentive to compile and preserve non-broadcast material; and the burden on journalists' time and resources in responding to subpoenas.

*LaRouche* at 1182, 1294-1295.

With regard to the compelled disclosure of non-confidential information, the Court cited "scholarly authority" regarding harm to the press' ability to gather information by

> damaging confidential sources' trust in the press' ability to keep secrets and, in a broader sense, by converting the press in the public's mind to an investigative arm of the prosecutors and the courts. It is their independent status that often enables reporters to gain access, without a pledge of confidentiality, to meetings or places where a policeman or a politician would not be welcome. If perceived as an adjunct of the police or of the courts, journalists might well be shunned by persons who might otherwise give them information without a promise of confidentiality, barred from meetings which they would otherwise be free to attend and to describe, or even physically harassed if, for example, observed taking notes or photographs ….

*Duane D. Morris & John W. Zucker, the Journalists Privilege and Testimonial Privileges*, 474-75 (Scott N. Stone & Ronald S. Liebman eds, 1983). The Ninth Circuit continued:

> We find this body of Circuit case law and scholarly authoritives so persuasive that we think it unnecessary to discuss the question further. Accordingly, we hold that the journalists' privilege applies to a journalists' resource materials even in the absence of the element of confidentiality.

*Id.* at 1295.

In this matter, the government belatedly sought authorization for a subpoena to Mr. Sepulvado and obtained that authorization either late on February 15 or, as Mr. Bounds described, became aware of it on February 16. The subpoena nominally was for February 21, or other days that week. From the handling of this matter, the Court might reasonably draw the

Page 9 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

inference that the information sought from Mr. Sepulvado is not critically important and the government has not demonstrated a compelling need to acquire that information as the Ninth Circuit stated regarding a reporter's privilege in *Shoen v. Shoen*, 48 F.3d 412, 414 (9th Cir. 1995) quoting *Herbert v. Lando*, 441 U.S. 153, 183 (1979).

> Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process and ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of fact needed in the administration of justice.

With all due respect, the government's handling of this matter tends to indicate that quashing the subpoena would result in "incidental sacrifice." *Id*.

## IV. CONCLUSION

Decisions in the Ninth Circuit and throughout the federal system demonstrate that a reporter's privilege clearly exists even as its contours continue to be defined. The idea of a reporter's privilege may suffer from an image problem. Mr. Sepulvado and OPB do not in any way attempt to declare themselves "above the law." But Courts have long recognized privilege in a number of settings, permitting certain individuals to refuse to testify or to provide information because of the conclusion that there are important societal interests that must be preserved. While the exact contours of a reporter's privilege continue to be discussed, it cannot be gainsaid that scores of courts have expressly recognized that journalists must be able to remain independent in order to fulfill their long-standing role in our democracy. When, for one example, reporters are called into court to testify for or against a party, scores of courts have recognized that a reporter's credibility is harmed thereby, even in nonconfidential matters; as described, potential sources come to see a reporter as an agent of the state or as advocates for one side or the other.

Page 10 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Mr. Sepulvado and OPB, which has at issue the future of its own newsgathering, respectfully ask this Court to quash the government's subpoena.[2]

DATED this 21st day of February, 2017.

**DAVIS WRIGHT TREMAINE LLP**

By _____
**Duane A. Bosworth**
OSB #825077
Telephone: (503) 241-2300
Facsimile: (503) 778-5299
duanebosworth@dwt.com

Attorneys for Oregon Public Broadcasting and John Sepulvado

---

[2] Movants apologize for errors and missing page cites, which occurred in their haste to recreate this memorandum.

Page 11 - MOTION OF JOHN SEPULVADO AND OPB TO QUASH SUBPOENA

4851-8363-3987v.1 0050033-004060

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax