Charles F. Hinkle, OSB No. 710839
charles.hinkle@stoel.com
STOEL RIVES LLP
760 SW 9th Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Mathew dos Santos, OSB No. 155766
mdossantos@aclu-or.org
ACLU Foundation of Oregon, Inc.
PO Box 40585
Portland, Oregon 97240

Attorneys for ACLU Foundation of Oregon, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON PATRICK, DUANE LEO EHMER, DARRYL WILLIAM THORN, and JAKE RYAN,<br><br>Defendants. | Case No. 3:16-cr-00051-BR<br><br>MOTION TO APPEAR AS *AMICUS CURIAE* AND TO FILE MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO REPORTER |

Page 1   -   MOTION TO APPEAR AS *AMICUS CURIAE* AND TO FILE MEMORANDUM
            IN SUPPORT OF MOTION TO QUASH SUBPOENA TO REPORTER

90989110.1 0204262-00001

## I. Motion

ACLU Foundation of Oregon, Inc. ("ACLU") respectfully moves for an order permitting it to file the memorandum set out below in support of the Motion of John Sepulvado and Oregon Public Broadcasting to Quash Subpoena. ACLU has no private interest in the outcome of the merits of this case, but it has a strong interest in defending and promoting freedom of the press and in protecting the ability of journalists to engage in their newsgathering responsibility without interference from the government. ACLU has supported "media shield" laws at the state and federal level, and has filed *amicus* briefs in a number of cases involving efforts by state and federal law enforcement agencies to require journalists to testify in criminal prosecutions.

ACLU therefore seeks leave to file the *amicus* memorandum set out below, in order to present a position as to the correct rule of law. In this memorandum, ACLU relies on the statement of facts set out in the motion filed by Sepulvado and OPB.

## II. Memorandum

### A.    The role of the press

The U.S. Supreme Court has described the media as "surrogates for the public" in obtaining and reporting the news of the day. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980). "Beyond question, the role of the media [in reporting on public affairs] is important; acting as the 'eyes and ears' of the public, they can be a powerful and constructive force, contributing to remedial action in the conduct of public business." *Houchins v. KQED, Inc.*, 438 US 1, 8, 98 S Ct 2588, 57 L Ed 2d 553 (1978) (plurality opinion). For those reasons, among others, the courts have recognized that "'newsgathering is an activity protected by the First Amendment.'" *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir 2012) (citation omitted).

Page 2  -  MOTION TO APPEAR AS *AMICUS CURIAE* AND TO FILE MEMORANDUM
           IN SUPPORT OF MOTION TO QUASH SUBPOENA TO REPORTER

The importance of the media in preserving democracy has been recognized since the foundation of the American republic.  Thomas Jefferson famously wrote that "were it left to me to decide whether we should have a government without newspapers, or newspapers without a government, I should not hesitate a moment to prefer the latter."[1]  Jefferson's attitude may no longer represent the prevailing view in this country; certainly the present occupant of the White House has quite a different attitude toward the press.  In a tweet dated February 17, 2017, President Trump asserted that "The FAKE NEWS Media *** is the enemy of the American People!"[2]  A month earlier, he told a gathering at CIA headquarters that "I have a running war with the media."[3]

In a time when the news media are coming under increasing attack, it is more important than ever that the courts protect the independence of the media.  The role of the media in gathering and disseminating the news is compromised whenever government attempts to enlist the media as part of its investigation and prosecution of criminal conduct.  Requiring journalists to function as an arm of the government in prosecuting crime necessarily threatens the independence of the media and inhibits their ability to gather the news.  A great many people would be reluctant to talk to journalists and sources would dry up if they perceived those journalists to be agents of the government.  "[I]t is critical for the press to be able to report fairly

---

[1] See Philip Kurland and Ralph Lerner, eds., "The Founders' Constitution:  Amendment I (Speech and Press)," available at http://press-pubs.uchicago.edu/founders/documents /amendI_speechs8.html (visited Feb. 22, 2017).

[2] The President's tweet has been widely reported; it is quoted, for example, in "Fox News anchor Chris Wallace warns viewers: Trump crossed the line in latest attack on media," T*he Washington Post* (Feb. 19, 2017), available online at https://www.washingtonpost.com/news/the-fix/wp/2017/02/19/fox-news-anchor-chris-wallace-warns-viewers-trump-crossed-the-line-in-latest-attack-on-media/?utm_term=.b7abe1f1234c (visited Feb. 22, 2017).

[3] "Trump says he has 'running war' with media, gets facts wrong, in CIA speech," CNN (Jan. 21, 2017), available online at http://money.cnn.com/2017/01/21/media/donald-trump-war-with-the-media/ (visited Feb. 22, 2017).

Page 3    -    MOTION TO APPEAR AS *AMICUS CURIAE* AND TO FILE MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO REPORTER

and accurately on every aspect of the administration of justice," *Salzano v. North Jersey Media Group Inc.*, 993 A2d 778, 790-91 (NJ 2010), and the press cannot perform that function if reporters are perceived to be tools of the government.

Based on the facts set out in the motion filed by Sepulvado and OPB, ACLU agrees with them that the government's subpoena should be quashed. As shown more fully below, ACLU submits that Sepulvado has a privilege under the First Amendment not to testify in response to that subpoena, but because courts "should not pass upon a constitutional question, *** if there is a nonconstitutional ground upon which the case may be decided," *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 630 (9th Cir. 1982), this court should first consider whether and to what extent Sepulvado has a common law privilege not to testify.

### B.     Common Law Privilege

In 1972, the U.S. Supreme Court noted that as of that date, no journalist's privilege had been recognized at common law. *Branzburg v. Hayes*, 408 U.S. 665, 685, 688, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972). However, in a concurring opinion that Justice Stewart called "enigmatic," *id*. at 725, Justice Powell, whose vote was essential to the 5-4 majority opinion, seemed to endorse some form of privilege by pointing out "the limited nature of the Court's holding." *Id*. at 709. According to Justice Powell, the Court in *Branzburg* "[did] not hold that newsmen *** are without constitutional rights with respect to the gathering of news or in safeguarding their sources." *Id*. "The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony ***." *Id*. at 710.

In a highly-publicized journalist's privilege case in 2005 involving the disclosure of the identity of a CIA agent, Judge Henderson opined that courts "are not bound by *Branzburg's*

Page 4   -   MOTION TO APPEAR AS *AMICUS CURIAE* AND TO FILE MEMORANDUM
                  IN SUPPORT OF MOTION TO QUASH SUBPOENA TO REPORTER

commentary on the state of the common law in 1972." *In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964, 983 (D.C. Cir.) (Henderson, J., concurring), *reh. en banc denied*, 405 F.3d 17 (D.C. Cir.), *cert. denied,* 545 U.S. 1150 (2005) ("*Judith Miller*").  Judge Henderson noted that "Federal Rule of Evidence 501, which came into being nearly three years after *Branzburg*, authorizes federal courts to develop testimonial privileges 'in the light of reason and experience,' allowing for the often evolving state of the commonlaw [*sic*]."  *Id.*

The three members of the panel in *Judith Miller* took three different positions on the issue of whether a journalist's privilege exists at common law:  "Judge Sentelle would hold that there is no such common law privilege \*\*\*.  Judge Tatel would hold that there is such a common law privilege.  Judge Henderson believes that we need not, and therefore should not, reach that question."  *Judith Miller*, 397 F.3d at 973.  Judge Sentelle concluded that *Branzburg* had decided the issue, *id*. at 977, but Judge Tatel strongly disagreed.

One thing is certain:  the law has evolved a great deal since *Branzburg* was decided in 1972.  At that time, as the Court in *Branzburg* noted, 408 U.S. at 689 n. 27, only 17 States had enacted statutes recognizing a journalist's privilege.  By 2005, however, 49 States and the District of Columbia "offer[ed] at least qualified protection to reporters' sources."  *Judith Miller*, 397 F.3d at 993 (Tatel, J., concurring).  The nearly unanimous consensus on this point among the States is a strong indicator that the common law should recognize such a privilege, for the Supreme Court itself was strongly influenced by a similar consensus among the States when it recognized, for the first time, a psychotherapist privilege as a matter of federal common law in *Jaffee v. Redmond*, 518 U.S. 1, 12, 116 S. Ct. 1923, 135 L.Ed.2d 337 (1996) ("That it is appropriate for the federal courts to recognize a psychotherapist privilege under Rule 501 is

confirmed by the fact that all 50 States and the District of Columbia have enacted into law some

form of psychotherapist privilege").

In concluding that a journalist's privilege should be recognized at common law, pursuant

to the authority of Fed.R.Evid. 501, Judge Tatel relied in large part on the approach taken by the

Supreme Court in recognizing the psychotherapist privilege in *Jaffee*:

> "Under *Jaffee*, the common law analysis starts with the
> interests that call for recognizing a privilege. *See* 518 U.S. at 11.
> If, as the Supreme Court held there, '[t]he mental health of our
> citizenry is a public good of transcendent importance,' *id*.—one
> that trumps the 'fundamental maxim that the public has a right to
> every man's evidence,' *id*. at 9 (internal quotation marks and
> ellipsis omitted)—then surely press freedom is no less important,
> given journalism' vital role in our democracy.  Indeed, while the
> *Jaffee* dissenters questioned psychotherapy's 'indispensable role in
> the maintenance of the citizenry's mental health,' see *id*. at 22
> (Scalia, J., dissenting), the First Amendment's express protection
> for 'freedom ... of the press' forecloses any debate about that
> institution's 'important role in the discussion of public affairs,'
> *Mills v. Alabama*, 384 U.S. 214, 219, 86 S. Ct. 1434, 16 L.Ed.2d
> 484 (1966).  'Whatever differences may exist about interpretations
> of the First Amendment, there is practically universal agreement
> that a major purpose of that Amendment was to protect the free
> discussion of governmental affairs.'  *Brown v. Hartlage*, 456 U.S.
> 45, 52, 102 S. Ct. 1523, 71 L.Ed.2d 732 (1982) (quoting *Mills*, 384
> U.S. at 218-19, 86 S. Ct. 1434)."

*Judith Miller*, 397 F.3d at 991 (Tatel, J., concurring).  Later in his opinion, Judge

Tatel wrote:

> "Given that the common law issue thus remains open, this
> court must assess the reporters' claim in light of 'reason and
> experience' today.  As *Branzburg* itself observes in describing
> Congress's powers, privilege rules may require 'refashion[ing] ...
> as experience from time to time may dictate.'  408 U.S. at 706.
> Bestowing that refashioning power on the federal courts, Rule 501
> evidences an 'affirmative intention not to freeze the law of
> privilege,' but rather 'to leave the door open to change.'  *Trammel*
> [*v. United States*], 445 U.S. [40], 47, 100 S. Ct. 906[, 63 L.Ed.2d
> 186 (1980) (confidential marital communications)].  Consistent
> with that intent, the Court in *Trammel* modified the privilege

Page 6   -   MOTION TO APPEAR AS *AMICUS CURIAE* AND TO FILE MEMORANDUM
          IN SUPPORT OF MOTION TO QUASH SUBPOENA TO REPORTER

against adverse spousal testimony recognized just twenty-two
years earlier in *Hawkins v. United States*, 358 U.S. 74, 79 S. Ct.
136, 3 L.Ed.2d 125 (1958), allowing the testifying spouse to waive
the privilege, see *Trammel*, 445 U.S. at 53, 100 S. Ct. 906, even
though *Hawkins* had held just the opposite, *see Hawkins*, 358 U.S.
at 77- 78, 79 S. Ct. 136."

*Judith Miller*, 397 F.3d at 994 (Tatel, J., concurring).

Recognition of such a privilege would be particularly appropriate in the context of this

case, because Oregon has one of the strongest "shield laws" in the nation.  Or. Rev. Stat.

§ 44.320 provides in relevant part as follows:

> "(1)    No person * * * employed by * * * any medium of
> communication shall be required by a * * * judicial officer or
> body * * * to disclose, by subpoena or otherwise:

> "(a)    The source of any published or unpublished
> information obtained by the person in the course of gathering,
> receiving, or processing information for any medium of
> communication to the public; or

> "(b)    Any unpublished information obtained or prepared
> by the person in the course of gathering, receiving, or processing
> information for any medium of communication to the public."

The Oregon Court of Appeals has said that "[o]n its face, ORS 44.520(1) protects

*absolutely* materials that fall within the shield, which include 'any unpublished information

obtained *** in the course of [newsgathering]' and not just confidential information or its

source."  *State ex rel. Meyers v. Howell*, 86 Or. App. 570, 575, 740 P.2d 792, 795 (1987)

(emphasis added; ellipses and brackets in original).  The Ninth Circuit has stated that federal

courts "may also look to state privilege law" in determining the existence and scope of privileges

that should be recognized under Fed.R.Evid. 501," *Tennenbaum v. Deloitte & Touche*, 77 F.3d

337, 340 (9th Cir. 1996), and the law of Oregon with respect to the journalist privilege is very

clear.  The Supreme Court, in *Jaffee*, noted in the context of recognizing a federal common law

psychotherapist privilege that "any State's promise of confidentiality would have little value if

the patient were aware that the privilege would not be honored in a federal court," 518 U.S. at

13, and a similar observation can be made with respect to the promise of confidentiality that

Oregon has made to journalists and their sources.

If the Court decides not to apply the absolute privilege found in Oregon law, then it

should apply the same kind of balancing test that is applicable under the First Amendment. That

balancing test, and its application in this case, is discussed below, following the discussion of the

First Amendment privilege.

### C.    First Amendment Privilege

If this Court determines that no common law privilege applies to this case, then it must

consider the application of the First Amendment journalist's privilege.

More than 30 years ago, this court, per Judge Panner, recognized a First Amendment

journalist's privilege, and applied it to quash a subpoena to a reporter in a criminal case. *United

States v. Pendergraft*, CR 85-06 (PA) (May 7, 1985). A copy of Judge Panner's Order is

attached to this motion as Exhibit 1.

Eight years later, the Ninth Circuit agreed with Judge Panner, and squarely held that

under the First Amendment, "when facts acquired by a journalist in the course of gathering the

news become the target of discovery, a qualified privilege against compelled disclosure comes

into play." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("*Shoen I*"). This "journalist's

privilege" is "a 'partial First Amendment shield' that protects journalists against compelled

disclosure in all judicial proceedings, *civil and criminal alike*." *Id*. (emphasis added). "The

journalist's privilege is designed to protect investigative reporting," *id*. at 1293, and it "applies to

90989110.1 0204262-00001

a journalist's resource materials even in the absence of the element of confidentiality." *Id*. at

1295.

There is thus no doubt that the First Amendment privilege, as recognized in this Circuit,

applies to plaintiff's subpoena to Sepulvado.  The Ninth Circuit in *Shoen I* explained how a court

is to apply the privilege on the facts of a particular case:

> "Once the privilege is properly invoked, the burden shifts
> to the requesting party to demonstrate a sufficiently compelling
> need for the journalist's materials to overcome the privilege.  At a
> minimum, this requires a showing that the information sought is
> not obtainable from another source.  \*\*\*  In other words, before
> disclosure may be ordered, the requesting party must demonstrate
> that she has exhausted all reasonable alternative means for
> obtaining the information." *Id*. at 1296.
>
> \*\*\*\*\*
>
> "[C]ompelled disclosure from a journalist must be a 'last resort
> after pursuit of other appropriate opportunities has failed.'"

*Id*. at 1297 (citation omitted).

In *Shoen I*, the Ninth Circuit applied the privilege to bar the plaintiffs' effort to depose a

witness, because the plaintiffs had not taken the deposition of other persons who might have

been able to provide the relevant information.  *Id*. at 1296-98.

### D.     Application of the privilege in this case

As noted above, ACLU urges this Court to recognize a common law privilege and to

apply the same absolute protection for a journalist's unpublished information that is set out in the

Oregon Shield Law.  If the Court decides that the absolute protection found in the Oregon statute

should not be part of federal common law, then it should apply a balancing test.  That balancing

test should be the same whether the privilege is grounded in the common law or in the First

Amendment:  that is, the burden is on the plaintiff to show that the information that she wants to

  Page 9   -   MOTION TO APPEAR AS *AMICUS CURIAE* AND TO FILE MEMORANDUM
               IN SUPPORT OF MOTION TO QUASH SUBPOENA TO REPORTER

elicit from Sepulvado is "(1) unavailable despite exhaustion of all reasonable alternative sources;

(2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen v. Shoen*,

48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*").  A similar list of factors is found in one of the

cases cited by Judge Panner in the *Pendergraft* case, *United States v. Blanton,* 534 F Supp 295

(SD Fla 1982), *aff'd* 730 F2d 1425 (11th Cir 1984):

> "The First Amendment to the Constitution of the United States
> requires that a reporter be immune from subpoenas in criminal
> cases regarding his or her work product unless the party seeking
> the reporter's testimony first makes a showing of sufficient interest
> and need to overcome the reporter's constitutional privilege, and
> then only under appropriate safeguards to prevent abuse by those
> having court process available to them.  [citing cases]
>
> "In particular, to be entitled to enforcement of such subpoena, the
> party must show:
>
> "(a) The reporter has information relevant and material to proof of
> the offense charged or the defendant's defense;
>
> "(b) There is a compelling need for disclosure sufficient to
> override the reporter's privilege; and
>
> "(c) The party seeking the information has unsuccessfully
> attempted to obtain other sources less chilling of the First
> Amendment freedoms."

*Blanton*, 534 F. Supp. at 296-97.

ACLU submits that the facts set out in the motion filed by Sepulvado and OPB show

that the government cannot make the showing required by the Ninth Circuit in *Shoen II* or by the

district court in *Blanton*.  The government's subpoena to Sepulvado should be quashed.

Dated:  February 22, 2017.

                                        */s/ Charles F. Hinkle*
                                        Charles F. Hinkle, OSB 710839
                                        Telephone:  (503) 224-3380
                                          Of Attorneys for ACLU Foundation of Oregon

*capies to Caldwell & Collins*

U. S. DISTRICT COURT
DISTRICT OF OREGON
**FILED**

MAY 7 1985

ROBERT M. CHRIST, CLERK
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )   CRIMINAL NO. 85-6-PA
                                )
        v.                      )         ORDER
                                )
THOMAS R. PENDERGRAFT,          )
                                )
                Defendant.      )
                                )
_____ )

The government subpoenaed James Long, a reporter for The Oregonian. Long and The Oregonian moved to quash the subpoena. After a pretrial hearing on the matter, I ordered Long to answer the subpoena, and stated that I would evaluate the need for his testimony after hearing the government's case. Having done so, I granted the motion to quash. The government then withdrew the subpoena.

The journalist's privilege extends to the present case. The government seeks to compel testimony by a reporter that the defendant made certain statements to him. The statements were published in The Oregonian. Privileges do not normally extend to

1 - ORDER

1    statements where the information has been disclosed and the

2    relationship is not confidential.  While the privilege here cannot

3    be based in the common law concern for protecting certain

4    confidential relationships, it can be based in the first amendment

5    interest in preserving the free flow of information.  Potential

6    defendants would be less willing to talk to reporters if they

7    knew that the reporters would later testify against them at trial.

8    The privilege should apply.  Cf. United States v. Blanton,

9    534 F. Supp. 295 (S.D. Fla. 1982), aff'd on other grounds,

10   730 F.2d 1425 (11th Cir. 1984).  But cf. United States v. Criden,

11   633 F.2d 346 (3d Cir. 1980).

12        If the privilege applies, the next inquiry is whether it

13   has been overcome under the particular facts of the case.

14   Balancing the public's first amendment interest against its

15   interest in law enforcement,* and applying the factors first used

16   in Garland v. Torre, 259 F.2d 545 (2d Cir.), cert. denied,

17   358 U.S. 910 (1958), I find that the privilege has not been

18   overcome here.  While the intrusion upon first amendment interests

19   is slight, the need for the reporter's testimony is even less.

20   The statements attributed to defendant in the article are

21   cumulative of other kinds of evidence already received.  I agree

22   with the government that the article is inadmissable hearsay.

23   There is no dispute, however, concerning the facts defendant

24   _____

25   *    If the defendant had subpoenaed the reporter, I would balance
     the first amendment interest against the defendant's sixth
26   amendment right to fair trial.

2 - ORDER

1  described in his statements to the reporter.  There is no need to

2  upset the privilege here.

3        The motion to quash is GRANTED.

4        IT IS SO ORDERED.

5        DATED this 7 day of May, 1985.

6

7  _____
   OWEN M. PANNER
8  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3 - ORDER

EXHIBIT 1
Page 3 of 3

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2017, I filed a copy of foregoing document with the

Clerk of the Court for the United States District Court– District of Oregon by using the CM/ECF

system. Participants in this Case No. 3:16-Cr-00051-BR who are registered CM/ECF users will

be served by the CM/ECF system.

    ☐   mailing with postage prepaid

    ☐   overnight delivery

    ☐   email

    ☒   notice of electronic filing using the CM/ECF system

DATED:  February 22, 2017.

STOEL RIVES LLP

*/s/ Charles F. Hinkle*
Charles F. Hinkle, OSB 710839
Telephone:  (503) 224-3380
  Of Attorneys for ACLU Foundation of Oregon

Page 1    -    CERTIFICATE OF SERVICE

90989110.1 0204262-00001