BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**ETHAN D. KNIGHT, OSB #992984**
**GEOFFREY A. BARROW**
**CRAIG J. GABRIEL, OSB #012571**
Assistant United States Attorneys
ethan.knight@usdoj.gov
geoffrey.barrow@usdoj.gov
craig.gabriel@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:16-CR-00051-BR |
| v. | |
| JASON PATRICK,<br>DUANE LEO EHMER,<br>DARRYL WILLIAM THORN, and<br>JAKE RYAN, | GOVERNMENT'S RESPONSE TO MOTION TO QUASH SEPULVADO SUBPOENA (#1921) |
| **Defendants.** | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and through Ethan D. Knight, Geoffrey A. Barrow, and Craig J. Gabriel, Assistant United States Attorneys, hereby responds to John Sepulvado and his former employer's, Oregon Public Broadcasting, Motion to Quash Sepulvado's subpoena (ECF No. 1921).

Mr. Sepulvado's Motion to Quash should be denied; the factual basis for many of the concerns he, OPB, and amici raise are misplaced. In fact, the government intends to ask him only a few questions designed specifically to address this Court's concerns that the recording we seek to introduce is authentic and sufficiently complete. This is not a case in which the government is seeking to compel a reporter to disclose a confidential source. The only information that will be elicited relates to a public broadcast with a known individual (Ryan Bundy). Cross-examination should be limited with this witness as it is with any witness to those areas addressed on direct. So limited, many of the movant's concerns will be moot.

To the extent, however, that Mr. Sepulvado or his former employer (OPB) object to being called as a witness for any purpose, his objections should be denied for several reasons.

First, although he obliquely refers to governing law that "continue[s] to be defined," he fails to acknowledge that the Fourth Circuit has squarely held that there is no reporter's privilege applicable in criminal cases. *United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013). Although the court recognized a qualified reporter's privilege exists in civil cases, *id.* at 497, it declined to extend the privilege to criminal cases either under the First Amendment or Fed. R. Evid. 501.

The Ninth Circuit addressed the reporter's privilege in the civil context in *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995), but it has not (to the government's knowledge) directly recognized its application in criminal cases. In a federal contempt proceeding arising out of a state criminal case in which a reporter obtained a document in violation of a state judge's protective order, the Ninth Circuit commented that the law "seems" to require a balance between a criminal defendant's interest in a fair trial and a reporter's First Amendment rights, but the

**Government's Response to Motion to Quash Sepulvado Subpoena (#1921)**                    **Page 2**

court ultimately rejected the reporter's claims and held that his rights clearly subordinated to that of the state trial judge.   *Farr v. Pitchess*, 522 F.2d 464, 468 (9th Cir. 1975).    The issue of whether a reporter's privilege applies at all in criminal cases—the central issue in Sterling—does not appear to have been raised or addressed.[1]

The Ninth Circuit has, however, rejected something akin to a reporter's privilege in the criminal context in *In Re Grand Jury Proceedings*, 5 F.3d 397 (9th Cir. 1993).   A professor who did not want to answer a grand jury's questions about vandalism in an animal testing lab argued he was entitled to a "scholar's privilege" akin to that of a reporter.   *Id.* at 398.   In rejecting that claim, the court looked to *Branzburg v. Hayes*, 408 U.S. 665 (1972), and held that even reporters could not refuse to answer a grand jury's questions absent evidence that the questions were posed in bad faith or simply to harass.   The court squarely rejected the notion that a balancing was required or that a scholar/reporter could validly refuse to testify unless and until the government proved that its interest in the information outweighed the reporter's First Amendment interests.   The court also rejected the privilege claim under Fed. R. Evid. 501.

Although Mr. Sepulvado suggests that *Branzburg* and its progeny apply only to the grand jury context, he offers no support for that proposition.   Although some of the Supreme Court's analysis suggests that the grand jury's distinctive role played a part in that decision, the Court's

---

[1]   The ACLU accurately identifies an unpublished 1985 order in which Judge Panner recognized a reporter's privilege in a criminal case.   That order did not, however, cite or address *Branzburg v. Hayes*, 408 U.S. 665 (1972) at all, and therefore it should not be relied upon.   In any event, the facts in that case were materially distinguishable because the reporter's hoped for testimony was cumulative of other evidence in the case.   What the government seeks in this case cannot be obtained from any other source, and the evidence the reporter can authenticate is not cumulative of any other evidence in this case.

**Government's Response to Motion to Quash Sepulvado Subpoena (#1921)**               **Page 3**

rejection of a reporter's privilege did not hinge on that distinction. Indeed, the Fourth Circuit's ruling in *Sterling* observed that *Branzburg* involved both grand jury and trial testimony. *Sterling*, 724 F.3d at 488-89.

The Fourth Circuit offers several compelling reasons why the privilege should not apply in criminal cases at all—i.e., because privileges tend to exclude otherwise relevant information, the public's interest is at its apex in criminal cases, etc.—and why (at least in criminal cases) reporters should be treated like every other citizen who is compelled to give testimony. *Sterling*, 724 F.3d at 493. Like the Fourth Circuit, the Ninth Circuit has recognized that federal courts should construe privileges "narrowly," *United States v. Roberson*, 859 F.2d 1376, 1378 (9th Cir. 1988), and federal law (not state law) controls on privilege questions applicable to federal questions. *United States v. Banks*, 556 F.3d 967, 976 (9th Cir. 2009).

By contrast, the Second Circuit has recognized (without analysis) that a qualified reporter's privilege applies to criminal cases. *United States v. Treacy*, 639 F.3d 32, 42-43 (2d Cir. 2011). But even if the qualified privilege applies in the criminal setting, when the information sought is not confidential, the court held that a less demanding justification will suffice to overcome any claimed reporter's privilege. *Id.* at 42. In that case, the government successfully overcame the reporter's claimed privilege in testifying about an interview he conducted with the defendant where the prosecutors established that the information sought was: (1) likely relevant to a significant issue raised in the case; and (2) the information was not reasonably attainable from other sources. *Id. See also Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 30 (2d Cir. 1999) (noting that the showing required to overcome a reporter's privilege when

/ / /

the information sought is not confidential is "less demanding" than that required to disclose confidences).

The Second Circuit's formulation of the test required to overcome a qualified reporter's privilege in a criminal case or in a civil case involving non-confidential information is comparable to the test employed in civil cases in the Ninth Circuit (*Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995)) and DOJ policy, 28 C.F.R. 50.10. The DOJ policy reflected in the regulation is not enforceable. 28 C.F.R. 50.10(j); *see also In Re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1152-53 (D.C. Cir. 2006). The government's compliance with the policy is, however, strong proof that the information sought is in good faith and not for the purpose of harassment. The government has fully complied with both the letter and spirit of that policy despite the absence of binding precedent requiring that it do so.

In that respect, the record before this Court establishes that the testimony sought from Mr. Sepulvado is both relevant to a significant issue in this case and unavailable from any other source. Mr. Sepulvado's interview with Ryan Bundy represents direct evidence that the charged conspirators acted with a specific purpose to interfere with federal employees' ability to perform their jobs. The central issue in this trial is whether defendants intended to impede federal officials or whether they acted with other, non-criminal purposes. And the government's effort to lay a foundation for this same interview during the first trial foundered because we had not subpoenaed OPB or its reporter; as a consequence, the absence of a viable alternative is well-established. Moreover, because the original, complete, recorded interview has not been preserved by either OPB or Mr. Sepulvado, the only means the government has to

/ / /

**Government's Response to Motion to Quash Sepulvado Subpoena (#1921)**        **Page 5**

lay a foundation to prove that the preserved, recorded interview accurately captured Ryan Bundy's statements is through live testimony from Mr. Sepulvado.

Although Mr. Sepulvado speculates that the questioning may eventually delve into his confidential investigative processes, or it might position him in such a way that he is viewed as partisan, neither concern is well-founded. If he testifies, Mr. Sepulvado will be doing so pursuant to a subpoena and not as a willing volunteer; this litigation refutes that concern. And none of the government's areas of questioning will seek to place Mr. Sepulvado into a position in which he would be seen as partisan. Instead, the government seeks only to lay a sufficient foundation for the admission of the Ryan Bundy interview. To that end, the prosecutor will ask Mr. Sepulvado:

1. Whether he interviewed Ryan Bundy during the occupation;

2. When and where that interview took place;

3. Whether a portion of the interview was included in the OPB broadcast of January 9, 2016;

4. Whether that broadcast accurately depicts without additions or omissions, the relevant exchange between Mr. Sepulvado and Ryan Bundy; and

5. Whether Ryan Bundy's statements in those excerpts were fairly represented in light of the whole interview.

Through Fed. R. Evid. 403, this Court can protect Mr. Sepulvado's interests by precluding questions on direct or cross that seek to pry into private or investigative processes that have little to no relevance to the case. As a consequence, even if some form of qualified reporter's privilege applies to this criminal case, courts have recognized "less demanding" showings to overcome the privilege exist when, as here, the information sought is not confidential.

**Government's Response to Motion to Quash Sepulvado Subpoena (#1921)**                    **Page 6**

**Conclusion**

Mr. Sepulvado's Motion to Quash should be denied because there is no reporter's privilege applicable in federal criminal cases. That said, government policy recognizes the important role the press has in investigating news, and as a consequence, prosecutors do not frequently seek to subpoena reporters to testify. To the extent the law requires that the government make a threshold showing of good faith, need for the information, and the absence of viable alternatives, that showing has been made in this case. Accordingly, Mr. Sepulvado's Motion to Quash should be denied.

Dated this 23rd day of February 2017.

    Respectfully submitted,

    BILLY J. WILLIAMS
    United States Attorney


    *s/ Geoffrey A. Barrow*
    ETHAN D. KNIGHT, OSB #992984
    GEOFFREY A. BARROW
    CRAIG J. GABRIEL, OSB #012571
    Assistant United States Attorneys