Michael E. Rose, OSB#753221
E-mail: mrose@civilrightspdx.com
CREIGHTON & ROSE, P.C.
300 Powers Building
65 S.W. Yamhill Street
Portland, Oregon 97204
Phone: (503) 221-1792
Fax: (503) 223-1516

Of Attorneys for Gary Hunt

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **3:16-cr-00051-BR** |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF CIVIL CONTEMPT** |
| **AMMON BUNDY, et al.,** | |
| Defendants. | |
| **GARY HUNT,** | |
| Respondent. | |

## CERTIFICATE OF COMPLIANCE

This Memorandum of Law complies with the applicable word-count limitation under LR 7-2(b) because it contains 4850 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits,

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

PAGE 1 – MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S
MEMORANDUM IN SUPPORT OF CIVIL CONTEMPT

and any certificates of counsel.

## INTRODUCTION

"The proof for civil contempt must be clear and convincing – a higher standard than the preponderance of the evidence standard but less stringent than beyond a reasonable doubt." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461 (9th Cir. 1989); *Peterson v. Highland Music Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998).

In this case, respondent Gary Hunt does not dispute the authority of the court to issue protective orders or to seek to enforce compliance with such orders by way of contempt proceedings. At issue is whether Hunt should be held in contempt for his alleged violation of either or both of the orders previously issued herein (*see* Dkt Nos. 342, 1691-2). While there is some overlap, each of the protective orders presents its own unique issues.

## DISCUSSION

### 1. The first protective order

The first protective order issued on 24 March, 2016, (Dkt 342), is not, by its terms, directed to strangers to the litigation, such as Hunt. Rather, its express reach is the prohibition of the reproduction or dissemination of portions of the discovery in the underlying case, and is directed to: "(1) The defendants in this case; (2) Persons employed by the attorney of record who are necessary to assist counsel of record in preparation for trial or other proceedings in this case; and (3) Persons who defense counsel deems necessary to further legitimate investigation and preparation of this case."[1] It is undisputed that Mr. Hunt does not fall within any of those categories of individuals.

This, of course, is not dispositive, since the law of this Circuit is clear that, under some

---

[1] In the interest of convenience and concision, the persons identified as being subject to the terms of the protective order will be referred to as "parties," and the materials covered by the protective order will be referred to simply as "materials."

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

circumstances, even a stranger to a proceeding may be held to the terms of a court's order.[2]

"Nonparties may be found in contempt of an injunction provided they have actual notice of the

injunction and aid or abet in its violation. *See Ex parte Lennon*, 1897, 166 U.S. 548, 554, 17

S.Ct. 658, 41 L.Ed. 1110, 1113; Rule 65(d) F.R.Civ.P." *McGraw-Edison Co. v. Preformed Line*

*Prods. Co.*, 362 F.2d 339, 344 (9th Cir. 1966).

> "Non-parties may be held in civil contempt of a court ordered injunction on the grounds that they are either: (1) successors in interest to parties bound by the order or (2) aiders and abettors to a violation of the order by a party thereto. *See generally Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945)."

*Red 1 Invs., Inc. v. Amphion Int'l Inc*, 2007 U.S. Dist. LEXIS 85675 *5 (E.D. Wash. 20017). The

language in *Regal Knitware*, to which the court refers, explains that such decree

> "not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. In essence it is that *defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors*, although they were not parties to the original proceeding."

*Id.*, at 14. *See also NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir.

1977) ("Generally, 'to be held liable in contempt, it is necessary that a non-party respondent

'must either abet the defendant or must be legally identified with him' . . . .' *Backo v. Local 281,*

*United Bro. of Carpenters & Joiners*, 438 F.2d 176, 180-81 (2d Cir. 1970), cert. denied, 404

U.S. 858, 92 S. Ct. 110, 30 L. Ed. 2d 99 (1971). Those not identified with a party, but in *active*

*concert or participation* with him, are bound only with actual notice." (emphasis added)); *cf*

---

[2] As a general matter, protective orders are sufficiently akin to other orders of the court, such as orders for injunctive relief, TROs and the like, that they are, in the main, treated analytically, if not in detail, similarly. *See, e.g., Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983)*; Beckman Indus. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992), *citing Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782-3 (1st Cir. 1988); *Memphis Invest, GP v. Waite*, 2013 U.S. Dist. LEXIS 184947 (2013). *See also* 18 USC §401, the statutory authority, and *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), discussing the inherent authority, for the court's addressing contempts, both civil and criminal, for disobedience of court orders. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 944 (9th Cir. 2014).

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

FRCP 65(d).[3]

There does not appear to be any contention, let alone evidence, that Hunt was a successor in interest or somehow in legal "privity" or otherwise legally identified with any of the individuals to whom the protective order was expressly directed. Thus, the basis for the contempt allegation against Hunt must be that he aided or abetted the violation of the protective order.

While aiding and abetting is best known in the criminal context as one way of imposing criminal liability on an individual for the acts of another, it also emerges in the contempt context. *See*, *e.g.*, *United States v. Baker*, 641 F.2d 1311, 1314 (9th Cir. 1981). The dimensions of aiding/abetting in this context have been variously described by the courts, but, consistently have required that there first must be a violation of the order by one who is actually subject to it, *see*, *e.g.*, *Red 1*, at 6  ("aiders and abettors to a violation of the order *by a party* thereto" (emphasis added)),[4] and secondly that there must be a commonality of interest between the aider/abetter and the principal.

The court in *Red 1*, *id.*, went on to describe with approval the well-developed law of the Second Circuit in this regard:

> "'[O]ne who, with actual notice of the order, '*knowingly* assists a defendant in violating an injunction subjects himself to civil . . . proceedings for contempt.' *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir.1930). For such entities to

---

[3] *cf* FRCP 65(d)
(2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
    (A) the parties;
    (B) the parties' officers, agents, servants, employees, and attorneys; and
    (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

[4] It is assumed that the use of the term "party" contemplates parties as such, as well as those who are properly and expressly delineated in the order. In this case, that would include "(1) The defendants in this case; (2) Persons employed by the attorney of record who are necessary to assist counsel of record in preparation for trial or other proceedings in this case; and (3) Persons who defense counsel deems necessary to further legitimate investigation and preparation of this case." (Dkt 342).

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

be held in contempt they must *aid and abet the party named in the order . . . .' Id.* at 832; *Paramount Pictures Corp. v. Carol Publishing Group, Inc.,* 25 F.Supp.2d 372, 374 (S.D.N.Y.1998), *aff'd.* mem., 181 F.3d 83, 1999 WL 319328 (2d Cir.1999). Thus, a non-party who is alleged to have acted in concert to aid and abet a violation of an injunction can be held in contempt only upon the 'predicate' finding that the enjoined party has violated the order. *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2nd Cir. 2002). Contempt will not lie against one who 'acts independently and whose rights have not been adjudicated.' *Paramount Pictures Corp.,* 25 F.Supp.2d at 374, *quoting, Heyman v. Kline,* 444 F.2d 65, 65-66 (2d Cir.1971)." (Emphasis added).

The court in *Red 1* noted that a similar analysis was echoed by the Fifth Circuit in *Waffenschmidt v. Mackay*, 763 F.2d 711, 717 (5th Cir. 1985), which was (apparently) approved by the Ninth Circuit in *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995). Both the Second Circuit line of cases, and in particular the seminal opinion by Judge Hand in *Alemite*, and *Waffenschmidt* were cited with approval by the Ninth Circuit in *Sea Shepherd*, 774 F.3d 935, 949-50; *see also Lynch v. Rank*, 639 FSupp 69 (N.D. Cal. 1985).

As can be seen, in addition to a violation of the order by a party to it,[5] it is also necessary that it be proved that the alleged contemnor must "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he [sought] by his action to make it succeed." *Nye & Nissen v. U.S.*, 336 U.S. 613, 619, 93 L.Ed. 919, 69 S.Ct. 766 (1949) (*quoting U.S. v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1948)). What this requires is that there be some level of intentionality, that, to aid and abet, there must be a commonality of interest between the aider/abettor and the principal. This necessarily entails that the purpose of the principal be ascertained.

Although not controlling, the Ninth Circuit Model Criminal Jury Instruction on Aiding and Abetting is illustrative of how the mental state element of aiding and abetting as a concept

_____

[5] So long as it is proved that it was a party that violated the order, it is not necessary that that particular party be identified. *See United States v. Clark*, 980 F.2d 1143, 1146 (8th Cir. 1992): "[T]he government need not prove the actual identity of the principal, *provided the evidence shows that the underlying crime was committed by someone. United States v. Horton*, 921 F.2d 540, 543 (4th Cir. 1990), *cert. denied*, 115 L.Ed.2d 1027, 111 S.Ct. 2860 (1991)." (Emphasis added).

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

works.

## 5.1 AIDING AND ABETTING

A defendant may be found guilty of [*specify crime charged*], even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To prove a defendant guilty of [*specify crime charged*] by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

First, [*specify crime charged*] was committed by someone;

Second, the defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of [*specify crime charged*];

Third, the defendant acted with the intent to facilitate [*specify crime charged*]; and

Fourth, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit [*specify crime charged*].

A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime [and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime].

The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

To be sure, the standards of proof are different, but there is substantial conceptual overlap between aiding and abetting in the criminal context and in the civil contempt context, and there is no particular reason that shouldn't be the case, since the criminal instruction does mirror the contempt cases discussed above. The mental state component is clearly set out in the instruction: the defendant must have aided, counseled, commanded, induced or procured that person with respect to at least one element of the offense; the defendant acted with the intent to facilitate the offense, which is to say that the defendant actively participated in the criminal venture with advance knowledge of the crime; and the defendant acted before the offense was completed. The evidence must prove that the defendant acted with the knowledge and intention of helping that

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

person commit the offense.

It is suggested that the definition of aiding and abetting set out in the instruction, above, is an accurate and workable definition in the present civil contempt context (with of course, the application of the appropriate standard of proof).

In that light, and in sum, in order to find Hunt in contempt for aiding and/or abetting a violation of the protective order, it must be proved, by clear and convincing evidence, that:

a) Hunt was aware of the terms of the protective order;

b) a *party* violated the protective order;

c) Hunt knew that a party violated the order;

d) Hunt knew that the source of the materials he posted was a party who violated the order;

e) Hunt was aware of the purpose or intent of the party who violated the order; and

f) Hunt, in publishing the material to his blog, acted in furtherance of that intent or purpose.

It is anticipated that the evidence to be adduced at the hearing will prove that Hunt did, in fact, know the terms of the protective order and that he did publish the materials to his blog. However, it is also anticipated that there will be insufficient evidence, if any, to prove by clear and convincing evidence – or even by a preponderance of the evidence – that Hunt knew that the materials had their source in the violation of the order by a party, or that he knew what the intentions or purposes were of whoever may have violated the order, if indeed the order was violated by a party, or of whoever provided him with the materials, or that he acted in any kind of concert with or in furtherance of the purpose of whoever may have violated the order if, indeed, the order had been violated by a party. The evidence will be insufficient to support the conclusion that Hunt aided and abetted a violation of the first protective order.

///

///

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

**2. The second protective order**

On 11 January, 2017, this court issued its Order enforcing the first protective order and the Supplemental Protective order (Dkts. 1691-2), these directed squarely at Hunt and personally served on him. The Order specifically provides: "*Any individual* or entity that obtains materials protected by the Court's Protective Order (#342) is prohibited from disseminating those materials or any information derived therefrom to any other individual or entity by any means." Dkt 1692 (emphasis added). There does not seem to be any question that this Supplemental Order, on its face, prohibited *any*one, including Hunt, from republishing the protected material on, *e.g.*, one's blog.

This, of course, is only the beginning of the discussion.

First, since, unlike the first protective order, the second protective order was expressly addressed to "*Any individual* or entity that obtains materials. . ." (which necessarily included Hunt), proof of aiding and abetting is not a necessary component of the contempt. Nonetheless, aiding and abetting may yet be significant. In that regard, Hunt reiterates his position that there is insufficient evidence that he aided or abetted anything or anyone, which proof would appear to be a necessary predicate to the court's assertion of personal jurisdiction over him, since he is neither a resident of Oregon, nor a party nor in privity with a party subject to the protective order.

The law regarding aiding and abetting *per se* was not particularly well developed in the previous briefing. It is suggested that, in light of the more thorough discussion, *ante*, there will be insufficient evidence of aiding and abetting to satisfy even the lesser burden of proving the jurisdictional facts necessary for the issuance of the second protective order. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("where plaintiff is put to his full proof, plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189,

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

56 S.Ct. 780, 80 L.Ed. 1135 (1936).").

More fundamentally, in this case, the Supplemental Protective Order sought to prohibit Hunt from publishing online certain of his investigative pieces. A prior restraint such as this comes to the court "'bearing a heavy presumption against its constitutional validity.' *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *see also Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357(1931). The Government 'thus carries a heavy burden of showing justification for the imposition of such a restraint.' *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1  (1971)." *Steel Co. v.Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Initially, Hunt's publication of the materials is unquestionably an exercise of his rights to freedom of the press and freedom of speech and is thus protected by the First Amendment. The fact that he was posting to his blog rather than in a traditional print medium makes this no less an exercise of his press freedom. *See Obsidian Fin. Group, LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014); *Accuardi v. Fredericks*, 2014 U.S. Dist. LEXIS 27328, \*7 (D. Or. 2014)*; see also First Nat'l Bank v. Bellotti*, 435 U.S. 765, 777, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).

A protective order, such as those at issue herein, is thus, and quite plainly, a court order that actually seeks to prospectively forbid such protected speech activities; in these circumstances, the assertion of either of the protective orders over Hunt and his publications are an impermissible prior restraint. *See, e.g.*, *Radio & Television News Asso. v. United States Dist. Court for Cent. Dist.*, 781 F.2d 1443, 1446 (9th Cir. 1986) (noting that restrictions on *reporting* of events relating to a criminal proceeding invalidated as unconstitutional prior restraints); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (citations omitted) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.").

"Prior restraints on speech are 'the most serious and the least tolerable infringement on First Amendment rights.' *Nebraska Press Ass'n*, 427 U.S. [539,] at 559[, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)]; *Near v. Minnesota ex rel. Olson*,

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrrose@civilrightspdx.com

PAGE 9 – MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF CIVIL CONTEMPT

283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931) ('chief purpose of the (First Amendment's) guaranty [is] to prevent previous restraints upon publication'). The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.' *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) ('Temporary restraining orders and permanent injunctions – *i.e.*, court orders that actually forbid speech activities – are classic examples of prior restraints.') A system of prior restraints 'bear[s] a heavy presumption against its constitutional validity,' and the Government 'carries a heavy burden of showing justification for the imposition of such a restraint.' *Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1305, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (1983) (citation omitted). In order to justify a prior restraint, the government must demonstrate that the restraint is justified without reference to the content of the speech, and is narrowly tailored to serve a compelling governmental interest. *See Nebraska Press Ass'n*, 427 U.S. at 571; *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)."

*Twitter, Inc., Plaintiff, v. Sessions*, 2017 U.S. Dist. LEXIS 104562 * 12-13 (N.D. Cal. July 6, 2017); *see Bobolas v. Does*, 2010 U.S. Dist. LEXIS 110856, *18-19 (D. Ariz. 2010); *see also* M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, p. 4 - 14-16 (1984).

The courts have at various times described the weight of the government's burden to prospectively restrain protected expressive activity, and particularly press-related speech. For example, in *Bartnicki v. Vopper*, 532 U.S. 514, 527-8, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (emphasis added), the Court held:

"As a general matter, 'state action to punish the publication of truthful information seldom can satisfy constitutional standards.' *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 102, 61 L.Ed.2d 399, 99 S.Ct. 2667 (1979). More specifically, this Court has repeatedly held that 'if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, *absent a need . . . of the highest order*.' *Id.*, at 103; *see also Florida Star v. B. J. F.*, 491 U.S. 524, 105 L. Ed. 2d 443, 109 S.Ct. 2603 (1989); *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 56 L.Ed.2d 1, 98 S.Ct. 1535 (1978)."

In a case involving a trial court's restraint of the publication of matters attendant on a criminal trial, the Ninth Circuit, in *Columbia Broadcasting Systems, Inc. v. United States Dist. Court for Cent. Dist.*, 729 F.2d 1174 (9th Cir. 1983), held, quoting *Nebraska Press Association v. Stuart*, 427 U.S. at 569:

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

PAGE 10 – MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF CIVIL CONTEMPT

> "Only if it is 'clear that further publicity, unchecked, would so distort the views of potential jurors that *12 c[an] not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence* presented in open court' can an appellate court even consider upholding a prior restraint."

729 F.2d at 1178 (emphasis added).

Similarly, as Justice Stewart explained in *Landmark Commn's v. Virginia*, 435 U.S. at 849, in which the Court held that a newspaper could not be sanctioned for publishing information from confidential proceedings, the "government cannot take it upon itself to decide what a newspaper may and may not publish," and although "government may deny access to information and punish its theft, government may not prohibit or punish the publication of that information once it falls into the hands of the press, *unless the need for secrecy is manifestly overwhelming*." (Stewart, J., concurring) (emphasis added).

What that kind of manifest necessity may be is to be situationally determined, but the bar is set almost insuperably high.  In *Near v. Minnesota*, 283 U.S. at 697, the Court explained that prior restraints may be issued only in rare and extraordinary circumstances, such as *when necessary to prevent the publication of troop movements during time of war, to prevent the publication of obscene material, and to prevent the overthrow of the government*. As the Sixth Circuit wrote in *P&G v. Bankers Trust Co.*, 78 F.3d 219, 227-8 (6th Cir. 1996):

> "In the case of a prior restraint on pure speech, the hurdle is substantially higher: *publication must threaten an interest more fundamental than the First Amendment itself*. Indeed, the Supreme Court has never upheld a prior restraint, even faced with the competing interest of national security or the Sixth Amendment right to a fair trial."

It cannot be said that the showing made in support of the protective order – or the evidence anticipated at trial – satisfies the extraordinarily high burden warranting such prior restraint.

It remains to be discussed the fact that the instant prior restraint came in the form of a protective order rather than a TRO or permanent injunction or some other such "judicial order[] forbidding certain communications when issued in advance of the time that such

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

communications are to occur." *Alexander*, 509 U.S. at 550. In its opinion on the question of

jurisdiction (Dkt 1900), this court relied on the case of *Seattle Times Co. v. Rhinehart*, 467 U.S.

20, 104 S.Ct. 2199, 81 L.Ed.2d 17(1984) for the conclusion that:

> "because a Court enforcing its own prohibition on the dissemination of discovery
> materials is not the type of prior restraint that requires exacting scrutiny (*see
> Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)) and because a qualified press
> privilege is not implicated by an order that prohibits Hunt from disseminating
> protected discovery materials."

Dkt. 1900 at 3.

The square holding in *Rhinehart* was rather more narrow:

> "We therefore hold that where, as in this case, a protective order is entered on a
> showing of good cause as required by *Rule 26(c)*, *is limited to the context of
> pretrial civil discovery*, and does not restrict the dissemination of the information
> if gained from other sources, it does not offend the *First Amendment*."

*Id.* at 37 (emphasis added).[6]

As recognized by the Ninth Circuit in *In Re McClatchy Newspapers Inc.*, 288 F.3d 369,

374 (9th Cir. 2001), the concern of the Court in *Rhinehart* was "the governmental interest in

preventing *abuse of the civil discovery process,*" particularly in the context of disclosure of

private financial information of private litigants. Those concerns are inapposite given the fact

that the issue in the present case is related to criminal discovery and the very public conduct of

the government rather than protections of the privacy interests of private litigants.

The Court in *Rhinehart* was considering the First Amendment implications of a

protective order that limited disclosure of discovery materials, including financial information,

---

[6] In reaching its conclusion, the Court also noted, at 467 U.S. at 25, n 6, that *In re Halkin*,
598 F.2d 176 (D.C.Cir. 1979) characterized

> "a protective order as a 'paradigmatic prior restraint,' *Halkin* held that such orders
> require close scrutiny. The court also held that before a court should issue a
> protective order that restricts expression, it must be satisfied that "the harm posed
> by dissemination must be substantial and serious; the restraining order must be
> narrowly drawn and precise; and there must be no alternative means of protecting
> the public interest which intrudes less directly on expression."

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

of a private individual and the religious organization that he led in the context of civil litigation. That is a far cry from disclosure of material that shines a light on the activities of the Federal government, and, in particular, its covert surveillance activities directed at its citizens during a criminal investigation, as are at issue herein. The First Amendment has protected the dissemination of such materials even when it has been classified for national security reasons. For example, in the watershed decision in *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), the Supreme Court refused to enjoin the newspaper's publication of the Pentagon Papers, even though the Court acknowledged that the documents at issue were a "classified study" improperly leaked to the press. *Id.* at 714.

The other distinguishing feature is that in *Rhinehart*, the Court held that the trial court's undoubted interests in upholding the integrity of its processes were sufficient to justify the protective order in that case. That concern is not part of the equation in the present case. As the Ninth Circuit has held, upholding the integrity and authority of the court is a function of the *criminal* contempt process.

> "The primary purpose of *criminal* contempt is to punish past defiance of a court's judicial authority, *thereby vindicating the court*. See Shillitani, 384 U.S. at 369; *Gompers*, 221 U.S. at 441; *Accord United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). The principal beneficiaries of such an order are the courts and the public interest. *Ager v. Jane C. Stormont Hospital & Training School for Nurses*, 622 F.2d 496, 500 (10th Cir. 1980)."

*Falstaff Brewing Corp.*, 702 F.2d at 778. The civil contempt in the present case, on the other hand, exists as remedial sanction used to obtain compliance with court order or to compensate for damage sustained as result of noncompliance, rather than to punish contemnor or to vindicate court's integrity. *Id.*,; *see Morgan v Barry* 596 F. Supp. 897 (DC Dist Col. 1984). *See also Bromgard v. Montana*, 2007 U.S. Dist. LEXIS 67811 (D. Mont. Sept. 13, 2007) (protective order issued based on stipulation of the parties is not controlled by the holding in *Rhinehart*).

There is, consequently, no compelling reason to evaluate the protective orders in this case differently from other court-ordered prior restraints. So evaluated, the protective orders are

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

wanting, and, consequently, finding Hunt to be in contempt for their violation is prohibited by the First Amendment.

## CONCLUSION

For all of the foregoing reasons, this court should, at the close of evidence, find Gary Hunt not to be in contempt and to dismiss the within proceeding.


Respectfully submitted 21 July, 2017


 *s/ Michael E. Rose*
Michael E. Rose, OSB #753221
Of Attorneys for Gary Hunt

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

PAGE 14 – MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF CIVIL CONTEMPT